# United States Bankruptcy Court
## Western District of Missouri

In re: Valerie Kay Boyce,  )
                Debtor.  )    Case No. 15-30628-abf11
                        )
                        )

## <u>VALERIE KAY BOYCE'S DISCLOSURE STATEMENT</u><br><u>DATED AUGUST 11, 2016</u>

## I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the individual chapter 11 case of Valerie Kay Boyce (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Valerie Kay Boyce Reorganization Plan (the "Plan") filed by Valerie Kay Boyce on August 11, 2016. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages 5–10 of this Disclosure Statement. General unsecured creditors are classified in Class 3, and will receive a distribution of 100% of their filed and allowed claims, to be distributed as follows: 100% of the filed and allowed claim to Scott Yonker; and 100% of the filed and allowed claim to Portfolio Recovery.

### A.    Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why Valerie Boyce believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1. *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on <u>September 14, 2016 at 1:30 pm</u>, in the Bankruptcy Courtroom at the United States Federal Courthouse, 222 S. John Q. Hammons Parkway, Springfield, MO 65806.

#### 2. *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Angela D. Acree, JB James Law Firm, PC 4650 S. National, Ste. C-5, Springfield, MO 65810. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by <u>September 9, 2016</u> or it will not be counted.

#### 3. *Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the United States Trustee's Office and Valerie Boyce by <u>September 9, 2016.</u>

#### 4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Angela D. Acree, Attorney for Valerie Kay Boyce, 4650 S. National Ave., Ste. C-5, Springfield, MO 65810. (417) 886-6500.

### C. Disclaimer

***The Court has conditionally approved a previous version of this Disclosure Statement (see Bankruptcy Case No: 15-30628 Doc #97 entered June 20, 2016) as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until <u>September 9, 2016.</u>***

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

The Debtor is an individual in the business of owning and managing Limited Liability Companies that own apartments and real estate. Debtor's businesses are not in Chapter 11 bankruptcy, Debtor herself is in Chapter 11 bankruptcy.

### B.    Insiders of the Debtor

Debtor co-owns five LLCs with her brother's Jeffery Boyce and Jason Boyce and other non-related members. The different LLCs debts and assets are not reorganized under this bankruptcy, only Valerie Boyce's personal debts.

### C.    Events Leading to Chapter 11 Filing

Debtor Valerie Kay Boyce and Scott Yonker were divorced February 3, 2009. As part of the marital property settlement, Debtor was to pay $550,000 to Scott Yonker. At the time of the divorce decree, Debtor paid Mr. Yonker $300,000 toward the $550,000 owed. The balance of $250,000 was to be paid within two (2) years or by February 3, 2011.

Debtor believed that she would either be able to earn the amount she needed to pay off her ex-husband through her investments or would be able to use her equity interest in the apartments to get a loan to pay him off. However, as a result of the United States economic recession, by the time the remaining balance was due in February 2011, all of Debtor's investments had lost all their equity and Debtor owed more on the properties than the properties were worth. Consequently, no one would loan her any money to pay off her ex-husband's judgment.

Debtor's ex-husband sued her for contempt of court in state court for failing to pay the balance due him by the due date. Debtor filed her first Chapter 13 in the Western District of Missouri Case number 12-30337-abf13 on May 2, 2012 to prevent from being held in contempt by the state court judge and to discharge her marital property division obligation to her ex-husband. Upon motion by her ex-husband, Judge Federman found that the Debtor's bankruptcy petition was not filed in good faith and the bankruptcy was dismissed by order of the court on December 3, 2012.

Subsequently, Debtor was held in contempt by the state court judge for failing to pay the marital property settlement and was sent to jail. Her brothers bonded her out and she appealed the state court order that held her in contempt. On appeal, the appeals court ordered the state court to hold an evidentiary hearing to determine whether or not Debtor had the ability to purge herself of the contempt before the court could confine her to jail. After the evidentiary hearing, the state court determined that she did not have the present ability to purge herself of the contempt and ordered her to pay $530 per month toward the marital property settlement.

Debtor and her brothers secured another investor to help with the financing of a second apartment complex to be built on the vacant land located on their existing apartment complex ground. The Lodges @ Kensington Park is currently in the final phases of construction.

Debtor believes that once the construction is complete and the new apartments are leased, the distributions from the new complex will be sufficient to pay Debtor's ex-husband the balance owed to him. Debtor filed another Chapter 13 on November 20, 2015 proposing to pay 100% of the debt owed to her ex-husband, Bankruptcy Case Number 15-30628.

Upon motion by her ex-husband, it was determined that with the accumulated interest and payments made, the debt owed to the ex-husband exceeded the Chapter 13 debt limits. Debtor's Chapter 13 was converted to this Chapter 11.

D.    **Significant Events During the Bankruptcy Case**

- Debtor anticipates the construction on The Lodges @ Kensington Park to be completed and the loan to be converted from a construction loan to a semi-permanent business loan before the end of August 2016.  At the time the loan is converted, the $140,000 certificate of deposit that was being held as collateral for the construction loan will be released back to Debtor.
- Debtor received an updated appraisal on the completed construction project in July 2016.  The appraisal lists the value of completed Lodges project at approximately $13,000,000.  The current loan on that property is approximately $10,100,000, netting her an additional equity position after deductions for minority interest and marketability of **$277,312.50.**
- Debtor is proposing to use a portion (approximately $10,053.62) of the anticipated return of $140,000 to bring the Nationstar Mortgage co-signed by her ex-husband Scott Yonker current (the property at 4141 W. Ridgeview is presently in foreclosure and was originally planned to be surrendered).  She is also proposing to use an additional $15,000 to $20,000 to make the necessary repairs so that the property may be rented.  Debtor anticipates the rental property will net her an additional $3600 per year income. If the property were to foreclose as original planned, it is anticipated that there could be as much as a $60,000 deficiency balance.
- Debtor is proposing to distribute the balance of the $140,000 less approximate $20,000 for the repairs for 4141 W. Ridgeview and the estimated $14,191.46 necessary to bring the Class 2 secured properties current, as a distribution to unsecured creditors in the first month's payment upon confirmation of the plan.

E.    **Projected Recovery of Avoidable Transfers**

**The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.**

F.    **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

G.    **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in Exhibit B.  Debtor is in the business of real estate investing and she has used her best judgment in estimated the value of her assets. The business asset The Lodges @ Kensington Park was the subject of a recent appraisal and upon completion, it is estimated this asset will be valued at $13,000,000.

The Projected Income and Expense Statement as of the date of the plan filing is attached as Exhibit C.  The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case are set forth in Exhibit D.

### III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

#### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

#### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

##### 1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses Arising in the Ordinary Course of Business After the Petition Date | None | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | None | Paid in full on the effective date of the Plan, or according to terms of obligation if later |

| Professional Fees, as approved by the Court. | Currently estimated to be $14,300, $6,000 of which has been paid for services rendered during the Chapter 13, the remaining of which is to be offset by retainer held in trust upon court approval of such fees with the remainder to be paid upon confirmation. | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
|---|---|---|
| Clerk's Office Fees | None | Paid in full on the effective date of the Plan |
| Other administrative expenses | None | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | Current | Paid in full on the effective date of the Plan |
| TOTAL | $14,300.00 | |

### 2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief. The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan: **None known**.

### C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.    *Classes of Priority Claims*

All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

### 2.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider ? (Yes or No) | Impairment | Treatment | | |
|---|---|---|---|---|---|---|
| 2A | *Secured claim of:*<br><br>Name = **Great Southern**<br><br>Collateral description = 5464 Hidden Valley Road (Debtor's residence) Value: $210,000<br><br>Allowed Secured Amount = $205,318.57<br><br>Priority of lien = 1st priority<br><br>Principal owed = $202,198.19<br><br>Fees, costs due = $2,360.65<br><br>Total claim = $205,318.57 | No | Unimpaired | Monthly Pmt<br><br>Pmts Begin<br><br>Pmts End<br><br><br><br>Interest rate %<br><br>Treatment of Lien<br><br>Additional payment required to cure defaults | =$1,658.59*<br><br>= upon plan confirmation<br><br>= 30-year amortization<br><br>= 6.5%variable<br><br>= allowed<br><br>= $2,360.65 paid upon plan confirmation | |
| 2B | *Secured claim of:*<br><br>Name = **Nationstar Mortgage**<br><br>Collateral description = 3318 E. Berkley Street Value: $95,500<br><br>Allowed Secured Amount = $ 95,140.61<br><br>Priority of lien = 1st priority<br><br>Principal owed = $94,996.93<br><br>Pre-pet. arrearage = $673.47<br><br>Total claim = $95,140.61 | No | Unimpaired | Monthly Pmt<br><br>Pmts Begin<br><br>Pmts End<br><br>Interest rate %<br><br>Treatment of Lien<br><br>Additional payment required to cure defaults | = $538.54*<br><br>= upon plan confirmation<br><br>= 40-year amortization<br><br>= 4.0%<br><br>= allowed<br><br>= $673.47 paid upon plan confirmation | |

| Class # | Description | Insider ? (Yes or No) | Impairment | Treatment | |
|---|---|---|---|---|---|
| 2C | *Secured claim of:* <br><br> Name = Seretus <br><br> Collateral description = 500 W. Tracy <br> Value: $66,100 <br><br> Allowed Secured Amount = $64,718.06 <br><br> Priority of lien = 1st priority <br><br> Principal owed = $64,071.63 <br><br> Pre-pet. arrearage = $1,103.72 <br><br> Total claim = $64,071.63 | No | Unimpaired | Monthly Pmt <br><br> Pmts Begin <br><br> Pmts End <br><br> Interest rate % <br><br> Treatment of Lien <br><br> Additional payment required to cure defaults | =$387.56* <br><br> = 9/1/2016 <br><br> = 40-year amortization <br><br> = 4% <br><br> = allowed <br><br> = $1,103.72 paid at confirmation |
| 2D | *Secured claim of:* <br><br> Name = **Nationstar** <br><br> Collateral description = 4141 W. Ridgeview <br> Value: $84,228.71 plus $15,000-$20,000 repairs and improvements. <br> Projected value: $95,000 <br><br> Allowed Secured Amount = $92,358.49 <br><br> Priority of lien = 1st priority <br><br> Principal owed = $92,358.49 <br><br> Pre-pet. arrearage = $10,053.62 <br><br> Total claim = $ 92,358.49 | No | Unimpaired | Monthly Pmt <br><br> Pmts Begin <br><br> Pmts End <br><br> Interest rate % <br><br> Treatment of Lien <br><br> Additional payment required to cure defaults | =$500* <br><br> =upon plan confirmation <br><br> = 30-year amortization <br><br> = 4% <br><br> = allowed <br><br> = $10,053.62 paid upon plan confirmation |

*Each Secured Claim monthly payment listed above includes an escrow portion that is subject to change due to escrow requirements. Debtor proposes to modify the monthly payment as requested

by each claimant to accommodate the slight changes in the escrow portion of the claim. Debtor has continued to make monthly payments to all creditors in this class during the pendency of her bankruptcy except for Class 2D Nationstar. The original plan was to surrender this asset. However, after discussing the potential deficiency after a foreclosure, (estimated at $60,000) with a knowledgeable professional, Debtor decided that it is in her best interest to bring Class 2D current upon confirmation of the plan and repair the rental to receive rents allowing her to make an annual net profit from this asset.

3.    <em>Classes of General Unsecured Claims</em>

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The Plan proposes to pay a prorata share (98.5% & 1.5%) of the net proceeds (estimated at $105,808.54) from the return of the CD previously used as collateral for the Lodges construction loan during the first month after confirmation.

The following chart identifies the Plan's proposed treatment of Classes 3A through 3B, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment | |
|---------|-------------|------------|-----------|---|
| 3A | General Unsecured Class – <br> Scott Yonker <br> $398,074.20 | Unimpaired | 1st Monthly Pmt = **$104,221.41** <br><br> Subsequent Monthly Pmt = **$8,395.80** <br><br> Pmts Begin = upon plan confirmation <br><br> Pmts End = 36 months <br><br> Interest rate from confirmation = 0% <br><br> Estimated percent of claim paid = 100% | |
| 3B | General Unsecured Class – <br> Portfolio Recovery <br> $6,114.79 | Unimpaired | 1st Monthly Pmt <br> Subsequent Monthly Pmt <br> Pmts Begin <br><br> Pmts End <br> Interest rate from confirmation <br> Estimated percent of claim paid | =$1,587.13 <br> = $129.36 <br> = upon plan confirmation <br><br> = 36 months <br> = 0% <br><br> = 100% |

4.    *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | Equity interest holders | Unimpaired | Debtor is the equity interest holder and maintains her interest. |

5.    *Class of Personal Guarantees of Debtor*

All personal guarantees previously made by Debtor on debts incurred by entities of which she owns a member interest shall remain undisturbed. All loans are current, in good standing and Debtor's personal guarantee position shall remained unchanged by this plan.

D.    **Means of Implementing the Plan**

1.    *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Debtor receives bi-annual distributions dependent on her equity position with the

LLC and the income received from each LLC:

- 25% Member Interest in Kensington Park Apartment Homes LLC - $126,000

- 25% Member Interest in Kensington Investments LLC –$17,000, and

- 17.5% of Member Interest in The Lodges @ Kensington Park –$41,000.

  Additionally, she receives an annual salary as executive manager for The

  Lodges @ Kensington Park - $20,000; $7,011.60 net income from rental

  property; and $6708 for child support. See Valerie Boyce Projected Income

  and Expense Statement as Exhibit C.

### E.   Risk Factors

The proposed Plan has the following risks: Debtor's income is inextricably linked to the occupancy rate of the apartment complexes and rental properties that she owns and manages. If for any reason the economy worsens as it did in 2010-2011 and her apartment complexes' occupancy falls off, her income will drop.  Debtor believes that this risk is slight given the steady economic forecasts currently projected by those who know.

### F.   Executory Contracts and Unexpired Leases

**The Plan, in Exhibit 5.1, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Exhibit 5.1 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.**

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

*The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is September 9, 2016.*  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### G.   Tax Consequences of Plan

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

The following are the anticipated tax consequences of the Plan: (1) Tax consequences to the Debtor of the Plan; (2) General tax consequences on creditors of any discharge, and the general tax consequences of receipt of plan consideration after confirmation.

## IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the

Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that all classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1.    *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case is <u>September 21, 2016</u>.**

### 2.    *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.    *Who is Not Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:
- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### 4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by 'cram down' on non-accepting classes, as discussed later in Section [B.2.].

### 1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a 'cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not 'discriminate unfairly," and is 'fair and equitable' toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a 'cramdown' confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

### D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

####    1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Debtor anticipates the refund of $140,000 certificate of deposit currently held as collateral by the end of August 2016.

####    2.    *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit E.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $129,654.00. The final Plan payment is expected to be paid on September 1, 2019.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V.    **EFFECT OF CONFIRMATION OF PLAN**

### A.    **DISCHARGE OF DEBTOR**

Discharge: Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### B.    Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C.    Final Decree

**Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.**

Alternatively, the Court may enter such a final decree on its own motion.

Valerie Kay Boyce

Angela D. Acree, Attorney for Valerie Boyce
4650 S. National, Ste. C-5
Springfield, MO 65810
417-886-6500
Fax: 417-886-4281
aacree@jbjameslawfirm.com

*Exhibit H*

## United States Bankruptcy Court
## Western District of Missouri

In re: Valerie Kay Boyce,     )
          Debtor.     )     Case No. 15-30628-abf11
                          )
                          )

## VALERIE KAY BOYCE'S PLAN OF REORGANIZATION
## DATED AUGUST 11, 2016

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Valerie Kay Boyce (the "Debtor") from distributions from her ownership interests in her LLCs, rental property income, and earnings.

This Plan provides for four classes of secured claims; two classes of unsecured claims; one class of equity security holders; and one class of personal guarantees. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at one-hundred (100) cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.1    <u>Class 1</u>.    All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.2    <u>Class 2</u>.    The secured claims to the extent allowed as a secured claim under § 506 of the Code.

2.3    <u>Class 3</u>.    All unsecured claims allowed under § 502 of the Code.

2.4    <u>Class 4</u>.    The interests of the individual Debtor in property of the estate.

2.5    <u>Class 5</u>.    Personal guarantees by the Debtor.


### ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.1    <u>Unclassified Claims</u>. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.2    <u>Administrative Expense Claims</u>. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.3    <u>Priority Tax Claims</u>. Each holder of a priority tax claim will be paid consistent with § 1129(a)(9)(C) of the Code.

3.4    <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.


### ARTICLE IV
### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final non- appealable order. |
| Class 2A – Secured Claim of **Great Southern Bank** | Unimpaired | $1,658.59* monthly payment; 30-year amortization, 6.5% variable interest rate; $2,360.65 costs and other fees paid upon plan confirmation. |

| Class 2B – Secured Claim of **Nationstar Mortgage** | Unimpaired | $538.54* monthly payment; 40-year amortization, 4% interest rate, $673.47 initial arrearage paid upon plan confirmation. |
|---|---|---|
| Class 2C – Secured Claim of **Seretus** | Unimpaired | $387.56* monthly payment; 40-year amortization, 4% interest rate, $1,103.72 initial arrearage paid upon plan confirmation |
| Class 2D – Secured Claim of **Nationstar Mortgage** | Unimpaired | $500* monthly payment; 30-year amortization, 4% interest rate, $10,053.62 arrearage paid upon plan confirmation. |
| Class 3A - General Unsecured Creditor **Scott Yonker** | Unimpaired | $104,221.41 paid upon plan confirmation; $8,395.80 subsequent monthly payments for 35 months, claim paid 100% at 0% interest. |
| Class 3B - General Unsecured Creditors – **Portfolio Recovery** | Unimpaired | $1,587.13 paid upon plan confirmation; $129.36 subsequent monthly payments for 35 months, claim paid 100% at 0% interest. |
| Class 4 - Equity Security Holders of the Debtor | Unimpaired | Debtor is the equity interest holder and maintains her interest throughout the plan. |
| Class 5 – Personal Guarantees | Unimpaired | All personal guarantees previously made by Debtor on debts incurred by entities of which she owns a member interest shall remain undisturbed.  All loans are current, in good standing and Debtor's personal guarantee position shall remained unchanged by this plan. |

*Each secured claim's monthly payment includes an escrow portion that is subject to change due to escrow requirements.  Debtor proposes to modify the monthly payment to the creditor as requested by the claimant to accommodate the slight changes in the escrow portion.  Debtor has continued to make monthly payments to all creditors in this class during the pendency of her bankruptcy except for 2D as the original plan included a surrender of this asset.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan.

**Jeffrey Boyce;** Lease 2013 Chevy Malibu; Jeffrey Boyce is Debtor's and he owns the vehicle and is responsible for the note; Debtor makes payment, pays taxes and insurance and drives the vehicle. $647 per month plus taxes and insurance.

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.1(a) above, upon the date of the entry of the order confirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than September 21, 2016.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Debtor is proposing to make her plan payments as outlined above from the income derived from the semi-annual distributions from her LLCs, her salary and her income from her rental property. For a detailed analysis and projection of her income and expenses, please see Exhibit C attached.

## ARTICLE VIII
## GENERAL PROVISIONS

8.1    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.2     Effective Date of Plan. The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.3     Severability.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.4     Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.5     Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.6     Controlling Effect.   Unless a rule of law or procedure is supplied by federal law including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Missouri govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE
## OF DEBTOR

9.1.   **Discharge.** Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

By: _____

The Plan Proponent

By: _____

Attorney for the Plan Proponent

Angela D. Acree, Attorney for Valerie Kay Boyce
4650 S. National Ave., Ste. C-5
Springfield, MO 65810
417-886-6500
Fax: 417-886-4281
aacree@jbjameslawfirm.com

**Exhibit B**

Identity and Value of Material Assets of Debtor

|  | Value |
| --- | --- |
| Debtor's residence:<br>5464 Hidden Valley Rd Clever, MO 65631 | $210,000.00 |
| Rental: Single family home<br>500 W. Tracy St., Springfield, MO 65807 | $66,100.00 |
| Rental: Single family home<br>3318 E. Berkeley St., Springfield, MO 65804 | $95,500.00 |
| Rental property: Single family home<br>4141 W. Ridgeview, Springfield, MO 65619 | $84,228.71 (as is)<br>$95,000 (with repairs) |
| 25% Member Interest in Kensington Investments LLC | $85,922.00 |
| 17.5% of Member Interest in The Lodges @ Kensington Park | $277,312.50 |

## Valerie Boyce Projected Income and Expense Statement

| | | Plan Start Sep July-Dec 2016 | Jan-June 2017 | July-Dec 2017 | Jan-June 2018 | July-Dec 2018 | Jan-June 2019 | July-Sep 2019 | Monthly |
|---|---|---|---|---|---|---|---|---|---|
| **Income** | KPAH | $43,500.00 | $63,000.00 | $63,000.00 | $68,500.00 | $68,500.00 | $68,500.00 | $68,500.00 | $10,500.00 |
| | Ken Inv | $150,000.00 | | | | | | | |
| | Lodges | $0.00 | $8,862.50 | $8,862.50 | $8,862.50 | $8,862.50 | $8,862.50 | $8,862.50 | $1,477.08 |
| | Salary | $25,500.00 | $25,500.00 | $25,500.00 | $27,000.00 | $27,000.00 | $28,500.00 | $28,500.00 | $4,250.00 |
| | Rentals | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $1,666.67 |
| | Child Supp | $8,100.00 | $8,100.00 | $8,100.00 | $8,100.00 | $8,100.00 | $8,100.00 | $8,100.00 | $1,350.00 |
| | CH 13 Refund | $3,354.00 | $3,354.00 | $3,354.00 | $3,354.00 | $3,354.00 | $3,354.00 | $3,354.00 | $559.00 |
| | 4141 W Ridgeview Rents | $20,500.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $800.00 |
| | Initial Money in Accounts | $8,237.00 | | | | | | | |
| | | $242,691.00 | $123,616.50 | $123,616.50 | $130,616.50 | $130,616.50 | $132,116.50 | $132,116.50 | $20,602.75 |
| **Expenses** | House Payt | $10,063.80 | $10,063.80 | $10,063.80 | $10,063.80 | $10,063.80 | $10,063.80 | $10,063.80 | $1,677.30 |
| | Car Payt | $3,882.00 | $3,882.00 | $3,882.00 | $3,882.00 | $3,882.00 | $3,882.00 | $3,882.00 | $647.00 |
| | Rental Payt Tracy St | $2,862.96 | $2,862.96 | $2,862.96 | $2,862.96 | $2,862.96 | $2,862.96 | $2,862.96 | $477.16 |
| | Rental Payt Berkeley St | $3,231.24 | $3,231.24 | $3,231.24 | $3,231.24 | $3,231.24 | $3,231.24 | $3,231.24 | $538.54 |
| | Rental Ridgeview St. | $31,500.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $500.00 |
| | Rental Expenses | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $50.00 |
| | Health Insurance | $3,149.28 | $3,149.28 | $3,149.28 | $3,149.28 | $3,149.28 | $3,149.28 | $3,149.28 | $524.88 |
| | Car Insurance | $745.14 | $745.14 | $745.14 | $745.14 | $745.14 | $745.14 | $745.14 | $124.19 |
| | Property Taxes | $282.00 | $282.00 | $282.00 | $282.00 | $282.00 | $282.00 | $282.00 | $47.00 |
| | Electric | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $300.00 |
| | Trash | $109.98 | $109.98 | $109.98 | $109.98 | $109.98 | $109.98 | $109.98 | $18.33 |
| | Cable TV | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $125.00 |
| | Internet | $420.00 | $420.00 | $420.00 | $420.00 | $420.00 | $420.00 | $420.00 | $70.00 |
| | Phone/Internet | $1,920.00 | $1,920.00 | $1,920.00 | $1,920.00 | $1,920.00 | $1,920.00 | $1,920.00 | $320.00 |
| | Security Alarm | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $50.00 |
| | Fuel Car | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $300.00 |
| | Food | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 | $600.00 |
| | Clothing | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $100.00 |
| | Yard Work/Mowing/Wood | $720.00 | $720.00 | $720.00 | $720.00 | $720.00 | $720.00 | $720.00 | $120.00 |
| | Medical/Dental | $360.00 | $360.00 | $360.00 | $360.00 | $360.00 | $360.00 | $360.00 | $60.00 |
| | Personal Care Products | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $100.00 |
| | Total Expenses | $68,996.40 | $40,496.40 | $40,496.40 | $40,496.40 | $40,496.40 | $40,496.40 | $40,496.40 | $6,749.40 |
| | Extra Income | $173,694.60 | $83,120.10 | $83,120.10 | $90,120.10 | $90,120.10 | $91,620.10 | $91,620.10 | $13,853.35 |
| | Chapter 11 Payments | $164,300.00 | $48,600.00 | $48,600.00 | $48,600.00 | $48,600.00 | $48,600.00 | $24,300.00 | $8,100.00 *+$140,000 Initial Payment |
| | Total Ch 11 Paid | Sep-Dec | $212,900.00 | $261,500.00 | $310,100.00 | $358,700.00 | $407,300.00 | $431,600.00 | $520,602.75 |

B 25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT

In re _Valerie Kay Boyce_ .                      Case No. _15-30628_
                    Debtor

                                                 Small Business Case under Chapter 11

## SMALL BUSINESS MONTHLY OPERATING REPORT

Month: _June_                          Date filed: _July 30, 2016_

Line of Business: _Self Employed / Apartments_ NAISC Code: _____

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE EXAMINED THE FOLLOWING SMALL BUSINESS MONTHLY OPERATING REPORT AND THE
ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE,
CORRECT AND COMPLETE.

RESPONSIBLE PARTY:

_____
Original Signature of Responsible Party

_Valerie Boyce_
Printed Name of Responsible Party

| **Questionnaire:** *(All questions to be answered on behalf of the debtor.)* | **Yes** | **No** |
|---|:---:|:---:|
| 1. IS THE BUSINESS STILL OPERATING? | ☒ | ☐ |
| 2. HAVE YOU PAID ALL YOUR BILLS ON TIME THIS MONTH? | ☒ | ☐ |
| 3. DID YOU PAY YOUR EMPLOYEES ON TIME? | ☒ | ☐ |
| 4. HAVE YOU DEPOSITED ALL THE RECEIPTS FOR YOUR BUSINESS INTO THE DIP ACCOUNT THIS MONTH? | ☒ | ☐ |
| 5. HAVE YOU FILED ALL OF YOUR TAX RETURNS AND PAID ALL OF YOUR TAXES THIS MONTH | ☒ | ☐ |
| 6. HAVE YOU TIMELY FILED ALL OTHER REQUIRED GOVERNMENT FILINGS? | ☒ | ☐ |
| HAVE YOU PAID ALL OF YOUR INSURANCE PREMIUMS THIS MONTH? | ☒ | ☐ |
| 8. DO YOU PLAN TO CONTINUE TO OPERATE THE BUSINESS NEXT MONTH? | ☒ | ☐ |
| 9. ARE YOU CURRENT ON YOUR QUARTERLY FEE PAYMENT TO THE U.S. TRUSTEE? | ☒ | ☐ |
| 10. HAVE YOU PAID ANYTHING TO YOUR ATTORNEY OR OTHER PROFESSIONALS THIS MONTH? | ☐ | ☒ |
| 11. DID YOU HAVE ANY UNUSUAL OR SIGNIFICANT UNANTICIPATED EXPENSES THIS MONTH? | ☐ | ☒ |
| 12. HAS THE BUSINESS SOLD ANY GOODS OR PROVIDED SERVICES OR TRANSFERRED ANY ASSETS TO ANY BUSINESS RELATED TO THE DIP IN ANY WAY? | ☐ | ☒ |
| 13. DO YOU HAVE ANY BANK ACCOUNTS OPEN OTHER THAN THE DIP ACCOUNT? | ☐ | ☒ |

Page 2

B 25C (Official Form 25C) (12/08)

14. HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH? ☐ ☒

15. DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH? ☐ ☒

16. HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH? ☐ ☒

17. HAS ANYONE MADE AN INVESTMENT IN YOUR BUSINESS THIS MONTH? ☐ ☒

18. HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY? ☐ ☒

## TAXES

DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX OBLIGATIONS? ☐ ☒

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR THE PAYMENT.

*(Exhibit A)*

## INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH. THE LIST SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

*✱ This is included in Income & Expense Statement sent to Trustee*

TOTAL INCOME $ 28,522.15

### SUMMARY OF CASH ON HAND

Cash on Hand at Start of Month $ 6,798.29

Cash on Hand at End of Month $ 28,213.95

PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU  TOTAL $ 28,213.95

*(Exhibit B)*

## EXPENSES

*✱ included in income & expense statement sent separately*

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK ACCOUNTS THIS MONTH. INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE PURPOSE AND THE AMOUNT. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

TOTAL EXPENSES $ 7,106.49

*(Exhibit C)*

## CASH PROFIT

INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)* $ 28,522.15

EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)* $ 7,106.49

*(Subtract Line C from Line B)*  **CASH PROFIT FOR THE MONTH** $ 21,415.66

Case 15-30628-can11    Doc 125    Filed 08/11/16    Entered 08/11/16 21:40:44    Desc
Main Document    Page 26 of 31
Case 15-30628-abf11    Doc 119    Filed 07/30/16    Entered 07/30/16 13:40:55    Desc
Main Document    Page 3 of 4

Page 3

B 25C (Official Form 25C) (12/08)

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED
SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID. THE LIST MUST INCLUDE
THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE
DEBT AND WHEN THE DEBT IS DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

**TOTAL PAYABLES** $ _____

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK
YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD. YOU SHOULD INCLUDE WHO
OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE. *(THE U.S. TRUSTEE MAY
WAIVE THIS REQUIREMENT.)*

**TOTAL RECEIVABLES** $ _____

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU
HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED
BY THIS REPORT.

*(Exhibit F)*

## EMPLOYEES

NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED?

NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT?

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING
PERIOD?                                                                      $ _____

TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING
OF THE CASE?                                                                 $ _____

*NON-BANKRUPTCY RELATED:*

PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS
REPORTING PERIOD?                                                            $ _____

TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID SINCE THE
FILING OF THE CASE?                                                          $ _____

Page 4

B 25C (Official Form 25C) (12/08)

## PROJECTIONS

COMPARE YOUR ACTUAL INCOME AND EXPENSES TO THE PROJECTIONS FOR THE FIRST 180
DAYS OF YOUR CASE PROVIDED AT THE INITIAL DEBTOR INTERVIEW.

|  | Projected | Actual | Difference |
|---|---|---|---|
| ※ INCOME | $ 16,281.83 | $ 28,522.15 | $ (+)12,240.32 |
| ⌐ EXPENSES | $ 6,229.40 | $ 7,106.49 | $ (+) 877.09 |
| CASH PROFIT | $ 10,052.43 | $ 21,415.66 | $ (+)11,363.23 |

TOTAL PROJECTED INCOME FOR THE NEXT MONTH:       $ 1,628,.83

TOTAL PROJECTED EXPENSES FOR THE NEXT MONTH:     $ 6,229.40

TOTAL PROJECTED CASH PROFIT FOR THE NEXT MONTH:  $ 10,052.43

## ADDITIONAL INFORMATION

PLEASE ATTACH ALL FINANCIAL REPORTS INCLUDING AN INCOME STATEMENT AND BALANCE SHEET
WHICH YOU PREPARE INTERNALLY.

I recieve some income payments on an "every 6mo." basis and
some on a monthly basis. There fore my projected numbers
are an average of 6 months worth of income and will not
match monthly actual monthy income. ⦁ But over a 6 month
period both actual and projected income should be
pretty close.

Exhibit E

## KENSINGTON PARK APARTMENT HOMES LLC
## PROFIT ANALYSIS

| REVENUE | | Aug 2016-July 2017 | Aug 2017-July 2018 | Aug 2018-July 2019 |
|---|---|---|---|---|
| RENTAL INCOME | ($15/unit/yr rent increase) | $2,356,800.00 | $2,403,240.00 | $2,449,680.00 |
| APPLICATION FEES | $30/APPLICANT 50% TURNOVER | $11,000.00 | $11,000.00 | $11,000.00 |
| LATE FEES/ISF/TRASH | | $10,000.00 | $10,000.00 | $10,000.00 |
| PET RENTS/DEPOSITS $350-DEP/$30/MO | | $7,000.00 | $7,000.00 | $7,000.00 |
| LAUNDRY ROOM PROCEEDS | | $0.00 | $12,000.00 | $12,000.00 |
| WASHER/DRYER RENTALS | | $0.00 | $22,680.00 | $22,680.00 |
| COMMUNITY ROOM RENTALS | | $975.00 | $975.00 | $975.00 |
| TENANT DAMAGES PAID | | $4,800.00 | $4,800.00 | $4,800.00 |
| SHARED AMENITIES PAYT FROM THE LODGES | | $109,644.00 | $109,644.00 | $109,644.00 |
| EFFECTIVE GROSS INCOME | | $2,500,219.00 | $2,581,339.00 | $2,627,779.00 |
| | | | | |
| EXPENSES | | | | |
| MANAGEMENT FEE PAID TO KENSINGTON INVESTMENTS | | $108,000.00 | $108,000.00 | $108,000.00 |
| ACCOUNTING FEES/OFFICE FEES (VALERIE) | | $20,000.00 | $20,000.00 | $20,000.00 |
| ALARM SYSTEM | | $700.00 | $700.00 | $700.00 |
| SECURITY PATROL/POOL PATROL | | $16,600.00 | $16,600.00 | $16,600.00 |
| REPAIRS & MAINTENANCE | | $41,000.00 | $41,000.00 | $41,000.00 |
| CABLE TV | | $56,200.00 | $56,200.00 | $56,200.00 |
| HI SPEED INTERNET/PHONE/FAX | | $19,500.00 | $19,500.00 | $19,500.00 |
| TRASH SERVICE | | $9,768.00 | $9,768.00 | $9,768.00 |
| UTILITIES | | $99,500.00 | $99,500.00 | $99,500.00 |
| ADVERTISING | | $11,526.00 | $11,526.00 | $11,526.00 |
| OFFICE/SUPPLIES | | $14,700.00 | $14,700.00 | $14,700.00 |
| TURNOVERS | | $71,400.00 | $71,400.00 | $71,400.00 |
| MANAGEMENT/MAINTENENCE | | $134,000.00 | $134,000.00 | $134,000.00 |
| PAYROLL TAXES | | $48,000.00 | $48,000.00 | $48,000.00 |
| CREDIT CHECKS | | $11,700.00 | $11,700.00 | $11,700.00 |
| MOWING/LAWN CARE/SNOW REMOVAL | | $19,500.00 | $19,500.00 | $19,500.00 |
| POOL CARE | | $18,200.00 | $18,200.00 | $18,200.00 |
| TAX ACCOUNTING | | $17,300.00 | $17,300.00 | $17,300.00 |
| BANK CHECK PROCESSING FEES | | $2,000.00 | $2,000.00 | $2,000.00 |
| ANSWERING SERVICE | | $1,400.00 | $1,400.00 | $1,400.00 |
| OFFICE CLEANING | | $5,000.00 | $5,000.00 | $5,000.00 |
| INTERNET MAINTENANCE/TROUBLESHOOTING | | $13,800.00 | $13,800.00 | $13,800.00 |
| REPLACEMENT/FIXED ASSETS (OVER RR ALLOWANCE) | | $16,000.00 | $53,800.00 | $16,000.00 |
| ATTORNEY FEES | | $1,000.00 | $1,000.00 | $1,000.00 |
| TOTAL EXPENSES | | $756,794.00 | $794,594.00 | $756,794.00 |
| | | | | |
| NET OPERATING INCOME | | $1,743,425.00 | $1,786,745.00 | $1,870,985.00 |
| 2.87% 35YR AM +RR+INS+TAXES | | | | |
| ANNUAL LOAN PAYT | | $1,237,929.84 | $1,237,929.84 | $1,237,929.84 |
| CASH FLOW | | $505,495.16 | $548,815.16 | $633,055.16 |
| 25% MEMBERSHIP DISBURSEMENT | | $126,373.79 | $137,203.79 | $158,263.79 |

# KENSINGTON PARK INVESTMENTS LLC
## PROFIT ANALYSIS

|  | Aug 2016-July 2017 | Aug 2017-July 2018 | Aug 2018-July 2019 |
|---|---|---|---|
| **REVENUE** | | | |
| MANAGEMENT FEES | $108,000.00 | $108,000.00 | $108,000.00 |
| CONSTRUCTION LOAN MONEY HELD RELEASED | $566,000.00 | | |
| **EFFECTIVE GROSS INCOME** | **$674,000.00** | **$108,000.00** | **$108,000.00** |
| **EXPENSES** | | | |
| ACCOUNTING FEES | $2,300.00 | $2,300.00 | $2,300.00 |
| MOWING/MAINTENANCE LOTS | $2,400.00 | $2,400.00 | $2,400.00 |
| TAXES | $2,500.00 | $0.00 | $0.00 |
| PAYMENT ON TOWNHOME LOTS | $32,400.00 | $32,400.00 | $32,400.00 |
| **TOTAL EXPENSES** | **$39,600.00** | **$37,100.00** | **$37,100.00** |
| **CASH FLOW** | **$634,400.00** | **$70,900.00** | **$70,900.00** |
| **25% MEMBERSHIP DISBURSEMENT** | **$158,600.00** | **$17,725.00** | **$17,725.00** |

## THE LODGES AT KENSINGTON
## PROFIT ANALYSIS

| | | Aug 2016-July 2017 | Aug 2017-July 2018 | Aug 2018-July 2019 |
|---|---|---|---|---|
| **REVENUE** | | | | |
| RENTAL INCOME | ($15/unit/yr rent increase) | $1,250,244.00 | $1,267,524.00 | $1,284,804.00 |
| APPLICATION FEES | $30/APPLICANT  50% TURNOVER | $4,500.00 | $4,500.00 | $4,500.00 |
| LATE FEES/ISF/TRASH | | $3,700.00 | $3,700.00 | $3,700.00 |
| PET RENTS/DEPOSITS $350-DEP/$30/MO | | $7,000.00 | $7,000.00 | $7,000.00 |
| LAUNDRY ROOM PROCEEDS | | $12,000.00 | $12,000.00 | $12,000.00 |
| TENANT DAMAGES PAID | | $1,800.00 | $1,800.00 | $1,800.00 |
| **EFFECTIVE GROSS INCOME** | | **$1,279,244.00** | **$1,296,524.00** | **$1,313,804.00** |
| | | | | |
| **EXPENSES** | | | | |
| REPAIRS & MAINTENANCE | | $15,000.00 | $15,000.00 | $15,000.00 |
| INSURANCE/LIABILITY/WORKMANS COMP/BUILDING COVG | | $45,500.00 | $45,500.00 | $45,500.00 |
| CABLE TV | | $18,432.00 | $18,432.00 | $18,432.00 |
| HI SPEED INTERNET | | $7,200.00 | $7,200.00 | $7,200.00 |
| PROPERTY TAX | | $121,875.00 | $121,875.00 | $121,875.00 |
| TRASH SERVICE | | $7,344.00 | $7,344.00 | $7,344.00 |
| UTILITIES | | $48,000.00 | $48,000.00 | $48,000.00 |
| ADVERTISING | | $11,526.00 | $11,526.00 | $11,526.00 |
| OFFICE/SUPPLIES | | IN PHASE 1-3 | IN PHASE 1-3 | IN PHASE 1-3 |
| TURNOVERS | | $20,000.00 | $20,000.00 | $20,000.00 |
| MANAGEMENT/MAINTENANCE | | IN PHASE 1-3 | IN PHASE 1-3 | IN PHASE 1-3 |
| PAYROLL TAXES | | IN PHASE 1-3 | IN PHASE 1-3 | IN PHASE 1-3 |
| CREDIT CHECKS | | IN PHASE 1-3 | IN PHASE 1-3 | IN PHASE 1-3 |
| MOWING/LAWN CARE/SNOW REMOVAL | | $10,000.00 | $10,000.00 | $10,000.00 |
| POOL CARE | | IN PHASE 1-3 | IN PHASE 1-3 | IN PHASE 1-3 |
| TAX ACCOUNTING | | $5,800.00 | $5,800.00 | $5,800.00 |
| BANK CHECK PROCESSING FEES | | $530.00 | $530.00 | $530.00 |
| ANSWERING SERVICE | | IN PHASE 1-3 | IN PHASE 1-3 | IN PHASE 1-3 |
| ATTORNEY FEES | | $1,200.00 | $1,200.00 | $1,200.00 |
| FIRE MONITOR SYSTEM | | $3,000.00 | $3,000.00 | $3,000.00 |
| INTERNET MAINTENANCE AND TROUBLESHOOTING | | $5,100.00 | $5,100.00 | $5,100.00 |
| SHARED AMENITIES AGREEMENT COSTS  PD TO KENSINGTON | | $109,644.00 | $109,644.00 | $109,644.00 |
| **TOTAL EXPENSES** | | **$430,151.00** | **$430,151.00** | **$430,151.00** |
| | | | | |
| **NET OPERATING INCOME** | | $849,093.00 | $866,373.00 | $883,653.00 |
| 3.5% Amort. on 30yr.  (10.1M loan amt.) | | | | |
| ANNUAL LOAN PAYT | | $544,240.92 | $544,240.92 | $544,240.92 |
| CASH FLOW | | $304,852.08 | $322,132.08 | $339,412.08 |
| 17% MEMBERSHIP DISBURSEMENT | | $51,824.85 | $54,762.45 | $57,700.05 |

## SHARED AMENITIES AGREEMENT FEES ANNUALLY
## (ESTIMATED COSTS)

| | | |
|---|---|---:|
| Security Alarm Monitor | $ | 255.00 |
| Office Supplies | $ | 3,700.00 |
| Phone & Fax Lines | $ | 800.00 |
| Answering Service | $ | 500.00 |
| Office Cleaning | $ | 1,600.00 |
| Office & Comm Room  Electric | $ | 7,590.70 |
| Workman's Comp | $ | 1,100.00 |
| Fidelity Bond | $ | 300.00 |
| Office Staff Labor | $ | 32,000.00 |
| Maintenance Labor/Turnover/summer labor | $ | 18,000.00 |
| Payroll Tax | $ | 18,000.00 |
| Accounting/Office fees (Valerie) | $ | 7,441.86 |
| Security Service/Pool Guard | $ | 6,176.74 |
| Pool Maintenance | $ | 6,800.00 |
| Credit checks | $ | 3,300.00 |
| Fixed assets (maint tools office computers) | $ | 2,080.00 |
| | **$** | **109,644.30** |